IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

v.   Criminal Case No. 3:16cr87

**TRAVIS ROSE,**

       **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on two motions: (1) Defendant Travis Rose's *pro se* Motion for Compassionate Release, (ECF No. 57), and (2) Mr. Rose's counseled Motion for Compassionate Release Pursuant to Section 603(b) of the First Step Act of 2018 and 18 U.S.C. §§ 3582(c)(1)(A) (jointly the "Motions for Compassionate Release"), (ECF No. 66). The United States responded in Opposition, (ECF No. 68), and Mr. Rose replied, (ECF No. 69).

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons articulated below, the Court will deny the Motions for Compassionate Release.

### I. Background

#### A.  Mr. Rose's Underlying Offense

On July 12, 2016, Mr. Rose was charged in a two-count indictment: Possession with Intent to Distribute Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count One); and Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) (Count Two). (ECF No. 1, at 1.) On September 14, 2017, Mr. Rose entered into a written plea agreement with the United States in which he pleaded guilty to both counts. (ECF No. 36, at 1.)

The Plea Agreement, (ECF No. 36), and Statement of Facts, (ECF No. 37), describe the conduct underlying Mr. Rose's offense. On February 18, 2016, at approximately 10:25 p.m., multiple emergency 911 calls were received by the Richmond Police Department ("RPD"). (ECF No. 37 ¶ 3.) These calls reported hearing random gunfire around the 2800 and 2900 blocks of East Broad Street in the City of Richmond. (ECF No. 37 ¶ 3.) One caller also stated that she saw three people, two white males and one African American female, leaving the area and that one of the males "had fired several shots into the air." (ECF No. 37 ¶ 3.) The caller also described the clothing and approximate ages of these three individuals. (ECF No. 37 ¶ 3.)

A RPD officer responded to the area and witnessed three individuals matching the provided description. (ECF No. 37 ¶ 4.) Upon confirming the description of the three suspects, the officer requested an additional unit to respond. (ECF No. 37 ¶ 4.) RPD Officers saw the three individuals, one of whom was later identified as Mr. Rose, attempting to board a local bus, at which point the RPD Officers approached the bus and told all three to exit the bus. (ECF No. 37 ¶ 4.) After stepping off the bus, RPD officers asked Mr. Rose if he had a weapon, which he said he did. (ECF No. 37 ¶ 5.) RPD found Mr. Rose to have a .45 caliber Desert Eagle firearm with an empty magazine, which was later determined to be stolen from Chesterfield County, along with a substance believed to be crack cocaine, a baggie of marijuana, and a digital scale. (ECF No. 37 ¶ 5.) RPD officers also discovered that Mr. Rose had outstanding arrest warrants for failure to appear and vandalism. (ECF No. 37 ¶ 5.) Mr. Rose was brought to the police station where he told RPD officers that he knew the firearm was stolen, discussed his sale of drugs, and admitted he "emptied the magazine of his weapon by shooting rounds into the air." (ECF No. 37 ¶ 6.)

**B.      Mr. Rose's Total Offense Level and Criminal History Computation**

Prior to Mr. Rose's December 11, 2017 sentencing, the probation officer prepared the Presentence Report ("PSR") for Mr. Rose, summarizing his offense level and criminal history. (ECF No. 43 ¶¶ 20–52.) Mr. Rose received a two-point enhancement pursuant to U.S.S.G. § 2K2.1(b)(4)(A) because the offense involved a stolen firearm. (ECF No. 43 ¶ 23.) Mr. Rose also correctly received a four-point enhancement for possessing a firearm in connection with another felony offense pursuant to U.S.S.G. § 2K2.1(b)(6)(B). (ECF No. 43 ¶ 24.) Mr. Rose received a three-point reduction for his acceptance of responsibility under U.S.S.G. § 3E1.1(a)–(b), resulting in a Total Offense Level of 23. (ECF No. 43 ¶¶ 30–32.)

Mr. Rose's criminal history score subtotaled 12 points. (ECF No. 43 ¶ 53.) However, Mr. Rose received a two-point addition[1] to his criminal history score computation pursuant to U.S.S.G. § 4A1.1(d) (2021) because he committed the underlying offense "while under a criminal justice sentence for Possession of Cocaine With Intent to Distribute, as well as several other criminal justice sentences[.]"[2] (ECF No. 43 ¶ 54.) This led to a criminal history score of 14 and a Criminal History Category of VI. (ECF No. 43 ¶ 55.)

---

[1] Under the November 1, 2023 Sentencing Guideline Amendments, however, the provisions of U.S.S.G. §4A1.1(d) (2021) transitioned to U.S.S.G. §4A1.1(e) (2023). Under Amendment 821 at §4A1.1(e), Mr. Rose would receive only one additional criminal history point for committing the offense while under any criminal justice sentence. This provision of Amendment 821 applies retroactively. U.S.S.G. §1B1.10(d) (2023). With this adjustment, Mr. Rose's criminal history score would be 13 and his Criminal History Category would remain VI. The Court previously denied Mr. Rose's Motion for Compassionate Release pursuant to Amendment 821. (ECF No. 81.)

[2] His prior convictions include possession of cocaine with intent to distribute, brandishing a firearm, grand larceny, driving while intoxicated and driving while on a suspended license, trespass with intent to damage property, and assault and battery of a family member. (ECF No. 43 ¶¶ 41–52.)

3

According to the law at the time, Mr. Rose's Total Offense Level of 23 and Criminal History Category of VI resulted in a recommended Sentencing Guidelines range of 92–115 months' imprisonment on Counts One and Two. (ECF No. 43 ¶¶ 102–103.)

On December 11, 2017, the Court granted Mr. Rose's Motion for Sentence Variance and sentenced Mr. Rose to 76 months' incarceration on Count One and 76 months' incarceration on Count Two (running concurrently), to be followed by three years of supervised release on Count One and three years on Count Two, all to run concurrently. (ECF No. 49, at 2–3; ECF No. 50, at 3.)

The PSR also provided information on Mr. Rose's physical and mental condition. (ECF No. 43 ¶¶ 76–84.) Mr. Rose reported that he "has been an asthma sufferer since he was a child", and that he "used an Albuterol inhaler." (ECF No. 43 ¶ 77.) Mr. Rose also reported a diagnosis of high blood pressure, which he "controls through diet." (ECF No. 43 ¶ 77.) Despite these diagnoses, Mr. Rose "described himself as being in relatively good physical health." (ECF No. 43 ¶ 77.) Mr. Rose also has "a very long and very extensive history of mental health issues consisting of numerous psychiatric diagnoses (i.e. Attention-Deficit/Hyperactivity disorder, Bipolar disorder, Anxiety and Depression)[.]" (ECF No. 43 ¶ 79.) Mr. Rose has participated in a variety of treatment programs and manages these diagnoses with prescription medications, including "Ritalin, Concerta and Adderall for ADHD; Seroquel for Bipolar disorder; and Clonazepam and Buspar for anxiety." (ECF No. 43 ¶ 79.)

As of November 25, 2024, Mr. Rose has served 43 months and 5 days of his 76-month term of imprisonment, or approximately 57 percent of his sentence. (*See* ECF No. 75, at 1.) Mr. Rose is currently housed at USP McCreary in Pine Knot, Kentucky. *See Fed. Inmate Locator*,

4

BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Nov. 25, 2024). The Bureau of Prisons ("BOP") lists Mr. Rose's release date as December 16, 2026. *See id.*

### C. Mr. Rose's Motion for Compassionate Release

Mr. Rose filed a *pro se* Motion for Compassionate Release, requesting to be released to obtain different treatment for his anxiety and depression and due to the potential impact of COVID-19 due to his asthma and other health conditions. (ECF No. 57, at 1–2.) Mr. Rose, through Counsel, later filed the instant Motion for Compassionate Release, supplementing the *pro se* Motion. (ECF No. 66.) In the Motion, Mr. Rose describes how his health conditions make him particularly susceptible to complications if he were to contract COVID-19. (ECF No. 66, at 8–9.) Mr. Rose, now thirty years old, contends that his asthma, hyperlipidemia, hypertension, and excess weight "make[s] him more susceptible to severe symptoms [from COVID-19] should he contract it." (ECF No. 66, at 8–9.) Mr. Rose states that his asthma is being "treated with albuterol and mometasone furoate inhalers", his "hyperlipidemia is treated with atorvastatin, and the hypertension is treated with lisinopril." (ECF No. 66, at 8.)

In addition to his physical health conditions, Mr. Rose suffers from multiple health conditions to include ADHD, Bipolar disorder, anxiety, and depression. (ECF No. 66, at 8–9.) These conditions are being treated with "Remeron, duloxetine, mirtazapine, and sertraline." (ECF No. 66, at 9.) Mr. Rose admits that "the medical records do not indicate that [he] is unable to provide self-care, has a medical condition from which he is not expected to recover, or [is] suffering from a diagnosed medical condition that will deteriorate without long-term care," but asserts his chronic conditions and history of drug use have taken a toll on his body. (ECF No. 66, at 9.)

## II. Compassionate Release Under the First Step Act of 2018

### A. Legal Standard

Prior to the First Step Act of 2018, an individual could not petition the district court for relief on compassionate release grounds without approval from the BOP. *See Coleman v. United States*, 465 F. Supp. 3d 543, 546 (E.D. Va. 2020). In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[3] First Step Act of 2018, Pub. L. No.

---

[3] Section 3582(c) states, in pertinent part:

The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction . . .
>>
>>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

115–391, 115th Cong. (2018). Under the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences. *Coleman*, 465 F. Supp. 3d at 546.

Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. *See* 28 U.S.C. § 994(t).[4]

### B. **Exhaustion of Administrative Remedies**

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," a defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020); *Casey v. United States*, No. 4:18-CR-4

---

[4] 28 U.S.C. § 994(t) states:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. *Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.*

28 U.S.C. § 994(t) (emphasis added).

7

(RAJ), 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (same).

In his Motion for Compassionate Release, Mr. Rose submits, and the United States does not dispute, that he has properly exhausted his administrative remedies pursuant to U.S.C. § 3582(c)(1)(A) because Mr. Rose submitted a request for compassionate release on October 13, 2023 and did not receive a response within 30 days. (*See* ECF No. 66, at 5; ECF No. 66-1.) This Court so finds.

### C. Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Congress did not define "extraordinary and compelling reasons" in the statute. The United States Sentencing Commission does, however, further define "extraordinary and compelling reasons." U.S.S.G. § 1B1.13(b); *see United States v. Burrell*, No. 3:04-CR-364 (JAG), 2023 WL 7726404, at *4 n.7 (E.D. Va. Nov. 15, 2023). The Sentencing Commission

> addressed the issue in a policy statement, United States Sentencing Guideline § 1B1.13, which provided the BOP with several categories of extraordinary and compelling reasons to consider. For years following the passage of the First Step Act, the Sentencing Commission failed to update § 1B1.13 to account for motions filed by defendants, meaning the policy did not bind the courts when presented with a defendant's motion for compassionate release. A court therefore remained empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.

*Burrell*, 2023 WL 7726404, at *4 n.7 (cleaned up) (citing *McCoy*, 981 F.3d at 276, 281–82, 284).

The 2021 Sentencing Guidelines enumerated four bases on which to evaluate a motion for compassionate release. U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (U.S. SENT'G COMM'N 2021) identified four bases to establish extraordinary and compelling reasons for release:

> (A) medical conditions;
> (B) age;
> (C) family circumstances; and,
> (D) other reasons.

U.S.S.G. § 1B1.13 cmt. n.1(A)–(D).

In 2023, the United States Sentencing Commission published new sentencing guidelines amendments (the "2023 Sentencing Guidelines Amendments" or "2023 Amendments"). Pursuant to the 2023 Amendments, the Sentencing Guidelines now identify six instructive categories of extraordinary and compelling reasons that may allow for a sentence reduction.[5]

These are:

> (1) certain medical circumstances of the defendant, such as terminal illness or the inability to receive specialized medical care while incarcerated, [U.S.S.G.] § 1B1.13(b)(1)[6];
>
> (2) the defendant's age, *id.* § 1B1.13(b)(2)[7];
>
> (3) the defendant's family circumstances, *id.* § 1B1.13(b)(3)[8];
>
> (4) the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, *id.* § 1B1.13(b)(4)[9];

---

[5] *See* Appendix A, **U.S.S.G. § 1B1.13(b)** (2023).

[6] *See* **App. A, at U.S.S.G. § 1B1.13(b)(1)**; *cf.* Appendix B, **U.S.S.G. § 1B1.13 cmt. n.1(A)**.

[7] *See* **App. A, at U.S.S.G. § 1B1.13(b)(2)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(B)**.

[8] *See* **App. A, at U.S.S.G. § 1B1.13(b)(3)**; *cf.* App. B, at **U.S.S.G. § 1B1.13 cmt. n.1(C)**.

[9] *See* **App. A, at U.S.S.G. § 1B1.13(b)(4)**.

(5) 'any other circumstances or combination of circumstances ... similar in gravity to' the circumstances 'described in paragraphs (1) through (4).' *Id.* § 1B1.13(b)(5)[10]; and,

(6) the defendant received an 'unusually long sentence,' *id.* § 1B1.13(b)(6).[11]

*United States v. Tucker*, No. ELH-15-0359, 2023 WL 8357340, at *5 (D. Md. Dec. 1, 2023).

The United States Court of Appeals for the Fourth Circuit explained—even before the 2023 Sentencing Guidelines Amendments—that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf ... § 1B1.13 does not apply, and ... § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. The Fourth Circuit further illuminated that:

> [w]hen Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances—when sufficiently extraordinary and compelling—than to society's interests in the defendant's continued incarceration and the finality of judgments.

*United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

Since *McCoy* and *Hargrove*, the 2023 Amendments have taken effect. These Amendments clarify the Commission's view on what could constitute "extraordinary and compelling reasons" for a sentence reduction under the First Step Act.[12] *See Burrell*, 2023 WL

---

[10] *See* App. A, at **U.S.S.G. § 1B1.13(b)(5)**; *cf.* App. B., at **U.S.S.G. § 1B1.13 cmt. n.1(D)**.

[11] *See* App. A, at **U.S.S.G. § 1B1.13(b)(6)**.

[12] As other courts have observed,

> [t]he Fourth Circuit has yet to address the impact the amended Sentencing Guidelines have on *McCoy* and similar rulings or precisely how courts should apply the amended policy statement in motions for compassionate release, particularly motions filed before November 1, 2023. The Court need not reach this question, however, because [Mr. Rose] has failed to establish an extraordinary and

10

7726404, at *4 n.7 ("The Fourth Circuit has yet to address the impact the amended Sentencing Guidelines have on *McCoy* and similar rulings or precisely how courts should apply the amended policy statement in motions for compassionate release, particularly motions filed before November 1, 2023."). The *McCoy* court noted, however, that the Guidelines, while helpful, are merely advisory and do not bind the Court. "[D]istrict courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)); *see also United States v. Davis*, 99 F.4th 647, 658 (4th Cir. 2024) (confirming that under the 2023 Amendments Courts can still "consider any extraordinary or compelling reason for release raised by a defendant").

The United States Supreme Court has determined that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence[.]" *Concepcion v. United States*, 597 U.S. 481, 500 (2022). District courts within the Fourth Circuit have decided that sentencing disparities resulting from intervening changes in the Fourth Circuit's interpretation of the sentencing guidelines can constitute an "extraordinary and compelling reason" for compassionate release.[13] *See, e.g., United States v. Redd*, 444 F. Supp. 3d 717, 723–724 (E.D. Va. 2020) (finding that the "gross disparity between the sentence Mr.

---

compelling reason to reduce his sentence applying both the case law before November 1, 2023, and the amended Sentencing Guidelines.

*Burrell*, 2023 WL 7726404, at *4 n.7.

[13] The 2023 Sentencing Guideline Amendments added subsection (c) to U.S.S.G. § 1B1.13, which provides that a change in the law, or in non-retroactive Guidelines amendments, ordinarily shall not be considered when determining whether extraordinary and compelling reasons exist. However, subsection (c) includes an important caveat: "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." U.S.S.G. § 1B1.13(c) (2023).

Redd received and the sentence he would have received after the First Step Act . . . constitute[s] [an] extraordinary and compelling reason[] that warrant[s] a reduction to Mr. Redd's sentence"); *see also United States v. Fennell*, 570 F. Supp. 3d 357, 363 (W.D. Va. 2021) (finding that "the significant disparity between [Mr.] Fennell's current sentence and the [ten years reduced] sentence he would face today for the same offense provides an extraordinary and compelling basis for a sentence reduction under § 3582(c)(1)(A)"); *United States v. Arey*, 461 F. Supp. 3d 343, 350 (W.D. Va. 2020) ("The fact that if [the defendant] were sentenced today for the same conduct he would likely receive a [forty year] lower sentence than the one he is currently serving constitutes an 'extraordinary and compelling' reason justifying potential sentence reduction under § 3582(c)(1)(A).").

A plethora of unpublished cases follow this same reasoning. *See, e.g., United States v. Banks*, 2022 WL 220638, at *2–3, *6 (W.D. Va. Jan. 25, 2022) (88-month difference between the low end of defendant's career offender sentencing range and the low end of the non-career offender sentencing range was "such [a] gross disparit[y] in sentencing" that it constituted an extraordinary and compelling circumstance); *United States v. Williams*, No. 1:14-CR-428 (TSE), 2021 WL 5827327, at *6–7 (E.D. Va. Dec. 8, 2021) (difference of "more than three years longer than the high end of the guidelines that would have applied under *Norman*"[14] warranted a reduction in defendant's sentence from 168 months to 125 months); *United States v. Huggins*, No. 3:11-CR-15, 2021 WL 3025459, at *4 (W.D. Va. July 16, 2021) (sentencing disparity of more than five years was a "gross disparity" and an "extraordinary and compelling" reason

---

[14] *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019) (finding that defendant was subject to a lower guideline range because a drug conspiracy conviction did not constitute a "controlled substance offense" given that the statute of conviction "criminalize[d] a broader range of conduct than that covered by generic conspiracy").

12

warranting a sentence reduction); *but see United States v. Hinton*, No. 2:15-CR-80 (MSD), 2022 WL 988372, at *5 (E.D. Va. Mar. 31, 2022) (three to six year sentencing disparity "not so drastic that it constitutes an extraordinary and compelling reason for relief").

The 2023 Sentencing Guidelines Amendments explain in greater detail what a court should consider when considering medical circumstances as a basis for an extraordinary and compelling reason to grant compassionate release.

The relevant section of U.S.S.G. § 1B1.13(b) reads:

> (1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT.—
> \* \* \*
>
> (B) The defendant is–
>
> > (i) suffering from a serious physical or medical condition,
> >
> > (ii) suffering from a serious functional or cognitive impairment, or
> >
> > (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>
> (D) The defendant presents the following circumstances—
>
> > (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
> >
> > (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to

13

> the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(B)–(D).

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his [or her] prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (collecting cases). However, "the mere existence of COVID-19 in society . . . cannot independently justify compassionate release." *Id.* (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (internal quotation marks omitted)).

### D. Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the Section 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A); *Martin*, 916 F.3d at 397–98; *McDonald*, 986 F.3d at 412. The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed . . . to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect from the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

14

## III. Analysis

After due consideration, the Court will deny the Motion for Compassionate Release. (ECF No. 66.) Although Mr. Rose has exhausted his administrative remedies, the Court will deny the Motion for Compassionate Release upon finding that Mr. Rose does not offer any "extraordinary and compelling reasons" to support his request for release. 18 U.S.C. § 3582(c)(1)(A)(i). Additionally, even were Mr. Rose to offer an "extraordinary and compelling reason" to support his request for release, which he does not, the Court would find that the applicable statutory sentencing factors under § 3553 do not support a reduction of his sentence.

### A. Mr. Rose's Medical Conditions Do Not Establish an Extraordinary and Compelling Reason for Release

Mr. Rose's Motion for Compassionate Release contends that the Court should grant his immediate release to a halfway house because, medically, his asthma, hyperlipidemia, hypertension, and overweight status make him particularly susceptible to complications from COVID-19. (ECF No. 66, at 8–9.)

First, Mr. Rose provides that "there are no current cases of COVID-19" at the facility he is housed in. (ECF No. 66, at 9.) As of November 25, 2024, USP McCreary has zero active COVID-19 cases among inmates and staff. *See BOP COVID-19 Statistics*, BUREAU OF PRISONS, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData (last visited Nov. 25, 2024). Clearly, USP McCreary is not a "correctional facility affected or at imminent risk of being affected" by an ongoing outbreak of infectious disease. *See* U.S.S.G. § 1B1.13(b)(1)(D)(i).

Second, Mr. Rose fails to provide any persuasive particularized details regarding the severity of his conditions. Mr. Rose states generally that the Center for Disease Control and Prevention ("CDC") "notes that, '[h]aving excess weight can increase risk for chronic

15

conditions, such as high blood pressure, type 2 diabetes, and high cholesterol[]'" and that he "at just 30 years of age, already has two of these three co-existing conditions." (ECF No. 66 at 8–9.) However, Mr. Rose reports that his asthma, hyperlipidemia, and hypertension are all treated with medications. (ECF No. 66, at 8.) Therefore, the fact that he suffers from high blood pressure and high cholesterol is insufficient to support the conclusion that Mr. Rose "is at an increased risk of suffering severe medical complications or death as a result of exposure to [an] ongoing outbreak of infectious disease." *See* U.S.S.G. § 1B1.13(b)(1)(D)(ii).

The Court recognizes the grave health risks prisoners faced during this pandemic and commends nationwide efforts to promptly vaccinate prison staff and inmates. Fortunately, based on COVID-19 trends, on April 10, 2023, the President signed into law a Joint Resolution terminating the COVID-19 National Emergency.[15] The termination the National Emergency suggests that COVID 19—even while reappearing in variant form—no longer requires the drastic actions necessary during its peak. The Department of Health and Human Services confirmed as much when it allowed the federal Public Health Emergency for COVID-19 to expire on May 11, 2023.[16] In sum, given the decrease in COVID-19 exposure numbers, the emergency protections deemed necessary during the pandemic have been lifted.

Finally, Mr. Rose admits that he none of his conditions presents a "serious functional or cognitive impairment" or that he is "experiencing deteriorating physical or mental health because of the aging process" that "substantially diminishes [his] ability to provide self-care within the

---

[15] *See* Pub. L. No. 118–3, 118th Cong. (2023), https://www.congress.gov/118/plaws/publ3/PLAW-118publ3.pdf (last visited Nov. 25, 2024).

[16] *See COVID-19 Public Health Emergency*, U.S. DEP'T OF HEALTH & HUMAN SERVS., https://www.hhs.gov/coronavirus/covid-19-public-health-emergency/index.html#:~:text=Based%20on%20current%20COVID%2D19,day%20on%20May%2011%2C%202023 (last visited Nov. 25, 2024).

16

environment of a correctional facility and from which he . . . is not expected to recover." *See* U.S.S.G. § 1B1.13(B); (ECF No. 66, at 9). Mr. Rose seems to be receiving adequate treatment for each of his conditions while incarcerated. (*See* ECF No. 66, at 8–9.)

Considering the foregoing, this record does not justify Mr. Rose's immediate release from federal imprisonment due to his medical conditions, either alone or in combination with the other factors discussed *infra*. Given the context of the pandemic and the lack of any imminent risk of a COVID-19 outbreak at USP McCreary, Mr. Rose's increased risk of severe complications were he to contract COVID-19 does not warrant a reduction in his sentence at this time.

### B. The Aggregate of the Circumstances Do Not Create an Extraordinary and Compelling Reason for Release

Mr. Rose next argues that "his rehabilitation, in combination with his medical and mental health conditions present extraordinary and compelling reasons meriting his early release." (ECF No. 69, at 2.) This Court disagrees.

Mr. Rose does not show he is eligible for a sentence reduction pursuant to § 3582(c)(1)(A) because extraordinary and compelling circumstances do not exist on this record. COVID-19 no longer creates an emergency requiring drastic measures and Mr. Rose has failed to show any particularized susceptibility to the illness. Mr. Rose also failed to show that he is unable to care for himself due to his medical conditions or that his medical and mental health conditions are not being treated. Furthermore, while Mr. Rose has participated in several drug program classes and obtained his GED, these post-rehabilitation measures do not warrant his early release in light of the seriousness of his conviction. "Prisoners are *supposed* to follow the rules, take classes, work at a job, and otherwise attempt to improve themselves. That a prisoner does so means that he has met baseline expectations, not that he has done something

17

extraordinary." *United States v. Logan*, 532 F.Supp.3d 725, 735 (D. Minn. 2021) (emphasis in original). Therefore, the combination of Mr. Rose's physical and mental health conditions, along with his rehabilitative efforts, do not arise to extraordinary and compelling circumstances.

### C. The 3553(a) Factors Do Not Support a Reduction in Mr. Rose's Sentence

Although the Court has found that no extraordinary and compelling reasons exist to warrant Mr. Rose's release, the Court will nonetheless consider his request under the applicable statutory sentencing factors articulated in 18 U.S.C. § 3553(a).

Upon review, Mr. Rose's criminal history demonstrates a high risk of recidivism and presents a threat to the public through his disregard for the law. At the age of twenty-three, when he committed the offenses at issue, Mr. Rose had an extensive criminal history that resulted in a Criminal History Category VI, which is the highest level. (ECF No. 43 ¶ 55.) Mr. Rose's criminal history includes convictions for brandishing a firearm, possession of cocaine with intent to distribute, grand larceny, identity theft, assault and battery of a family member, multiple convictions for driving while under the influence and driving while his license was revoked, and trespass with intent to damage property. (ECF No. 43 ¶¶ 41–52.) Mr. Rose also committed the underlying offenses while under a criminal justice sentence for possession of cocaine with intent to distribute, as well as multiple other criminal justice sentences. (ECF No. 43 ¶ 54.)

Moreover, Mr. Rose does not propose conditions of release that would protect the safety of the community. Mr. Rose's release plan is to live in a halfway house until he is able to "get back on his feet and find community resources with the assistance of the probation officer." (ECF No. 69, at 3.) He states that "any concern about possible dangerousness due to the offense conduct . . . should be ameliorated with federal supervision, which can operate as both a deterrence and protection of the public." (ECF No. 69, at 3.) Mr. Rose's mother and step-father

have both passed away and his "only other close family member . . . suffered a stroke and cannot car[e] for herself." (ECF No. 69, at 3.) This does not convince the Court that Mr. Rose will not pose a danger to the public or that the safety of the community will be protected. Mr. Rose avers that being under a term of federal supervised release will deter him from committing further criminal acts. However, Mr. Rose has a history of non-compliance with parole and probation requirements. (ECF No. 43 ¶¶ 65–66.) In fact, Mr. Rose was "serving a probationary revocation sentence at the time he came into federal custody on April 17, 2017." (ECF No. 43 ¶ 66.)

In *United States v. Martin*, the Fourth Circuit vacated and remanded the district court's denial of both defendants' motions to reduce sentence because the district court failed to address any new mitigating evidence when denying the motions. 916 F.3d at 397–98. The Fourth Circuit explained that if an individual is eligible for a sentence reduction, the district court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *Id.* at 397. However, Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). With these dictates in mind, the Court acknowledges and commends Mr. Rose's participation in BOP programs and encourages him to continue to do so but finds that these measures do not warrant his immediate release in light of the nature and circumstances of his underlying conviction, the history he brings to this Court, the totality of his record, and the need to protect the public.

This is especially true because, at the time of filing, Mr. Rose had accrued nine disciplinary reports during the first three years and two months of his incarceration. (ECF No. 75, at 1.) Mr. Rose had been sanctioned for refusing to obey an order, possessing a dangerous weapon, possessing drugs and/or alcohol, refusing drug or alcohol tests, destroying property,

misusing authorized medication and being in unauthorized areas. (ECF No. 75, at 1.) Four of these infractions occurred after Mr. Rose filed his *pro se* Motion for Compassionate Release. (ECF No. 75, at 1.) Thus, in addition to considering "the multitude of redemptive measures that [Mr. Rose] has taken", *see Martin*, 916 F.3d at 397, the Court adds that other of Mr. Rose's actions since being incarcerated cut against a finding of redemption and rehabilitation.

In total, consideration of the 18 U.S.C. § 3553(a) factors does not support compassionate release even if this Court were to find an "extraordinary and compelling reason[]" to warrant a reduction in Mr. Rose's sentence. *See* 18 U.S.C. § 3582(c)(1)(A).

## IV. Conclusion

For the reasons explained above, the Court will deny the Motion for Compassionate Release. (ECF No. 66.) Mr. Rose's *Pro Se* Motion for Compassionate Release, (ECF No. 57), is denied as moot.

An appropriate Order shall issue.

Date: 11/25/2024
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

20